[Crim. No. 17389. Fourth Dist., Div. Three. Sept. 10, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
DEBORAH RODRIGUEZ, Defendant and Respondent.

**COUNSEL**

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and Randell L. Wilkinson, Deputy District Attorneys, for Plaintiff and Appellant.

Weisenberg, Nelson, Viefhaus & Lutes and James E. Haney for Defendant and Respondent.

OPINION

BRICKNER, J.*—

FACTS

From 1979 to August 31, 1982, Rodriguez received aid for families with dependent children (AFDC) and food stamps from the County of Orange. On August 12, 1982, the County of Orange filed a Notice of Action stating its intention to discontinue aid, effective August 31, 1982, because the county believed the children's father, Richard Rodriguez, was residing with respondent in her home. Under Welfare and Institutions Code section 10950, Rodriguez requested a "fair hearing" before the Department of Social Services (DSS). Before that hearing, the County of Orange filed a "Statement of County Position," outlining the welfare history of Rodriguez, noting its suspicion of the father's residency, and concluding her AFDC assistance "should be terminated."

At the fair hearing on September 27, 1982, a county investigator testified he had talked to neighbors and learned Richard Rodriguez was residing with Respondent and her children. He had not seen the husband at the home, and declined to produce the witnesses who had actually observed husband, citing the anticipation of a criminal welfare fraud case against Rodriguez. Rodriguez testified her husband had not lived with her at any time while she received welfare benefits.

The hearing officer concluded Rodriguez' welfare benefits should not be terminated because the facts presented by the county were too weak to prove, by the preponderance of the evidence, the father's residency, and he found "claimant and Richard Rodriguez *are not* residing together." (Italics added.) The county sought no review.

Before the hearing officer's decision was adopted, a criminal complaint was filed charging Rodriguez with two counts of welfare fraud (Welf. & Inst. Code, § 11483) committed between January 7, 1979 and August 1981 and between May 1982 and August 1982, and two counts of food stamp fraud (Pen. Code, § 396) committed between March 1980 and August 1981 and between May 1982 and August 1982. After a preliminary examination, Rodriguez was held to answer on all four charges.

On May 10, 1983, Rodriguez filed a common law motion to dismiss the action under *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651

*Assigned by the Chairperson of the Judicial Council.

P.2d 321], contending the hearing officer's finding collaterally estopped prosecution. The motion was granted and the entire action was dismissed. The People appeal.

DISCUSSION

The correctness of the ruling below turns on the application of *People* v. *Sims, supra,* 32 Cal.3d 468, also a welfare fraud prosecution. Sims had received $5,395 in AFDC and $1,144 in food stamps. The Sonoma County Department of Social Services demanded restitution of those benefits, claiming she was ineligible to receive them because the children's employed father lived in the home, a fact which Sims had allegedly concealed. A "Notice of Action" was filed, proposing to reduce future cash grants to compensate for the overpayments. Sims requested a "fair hearing."

Before the hearing, a criminal complaint charging welfare fraud was filed against Sims in municipal court. (Welf. & Inst. Code, § 11483.) After pleading not guilty, she attended her "fair hearing," at which the county presented no evidence, contending the DSS lacked jurisdiction because of the pending criminal action. Both Sims and her husband testified, denying his residency.

The hearing officer found the county had failed to prove welfare fraud, ordered the Notice of Action rescinded and a refund of all restitution payments. The county did not appeal.

Sims then moved for dismissal of the criminal charges, contending her exoneration of welfare fraud by the hearing officer collaterally estopped criminal prosecution for the same offense. The trial court agreed and dismissed the information. The California Supreme Court affirmed.

■ *Sims* enunciates the three elements of collateral estoppel: (1) The issue necessarily decided at the previous proceeding is identical to the one sought to be relitigated. (2) The previous proceeding resulted in a final judgment on the merits. (3) The party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding. (*People* v. *Sims, supra,* 32 Cal.3d at p. 484.) Finding all these elements established, the court held collateral estoppel barred the People from prosecuting Sims for welfare fraud, as the hearing officer's decision was conclusive on that issue. (*Id.,* at p. 488.) The court based its ruling upon the perceived legislative policy of special statutory schemes establishing preferential treatment for noncriminal resolution of cases involving those accused of welfare fraud, preservation of the integrity of DSS hearings by

reinforcing the finality of their judgments, and the enhancement of judicial economy by minimizing repetitive litigation. (*Id.*, at pp. 488-489.)

■ Rodriguez contends the favorable resolution of the issue of father residency in *her* DSS hearing precludes, under *Sims,* her prosecution for welfare fraud. Assuming *Sims* applies to this case, we hold its rationale dictates estoppel here, but *only* as to those issues *raised* and *decided* at the DSS hearing.

We first note the central issue before the Department of Social Services was whether Rodriguez' benefits should be *terminated*; the question of her *fraud* was never directly raised. The county "Notice of Action," which appears to frame the "fair hearing" issues, states merely an intention to discontinue aid because the absent parent resides in the home of the welfare recipient. It does not mention fraud or residency dates before August 9, 1981. The "Statement of County Position," roughly analogous to a trial brief, provided background information concerning Rodriguez' welfare benefits and the suspicion of the father's residency in Rodriguez' home. It concluded: "Orange County correctly proposed a *termination* of claimant's AFDC assistance." (Italics added.) The only issue, therefore, before the hearing officer, was, in Department of Social Services cant, "absence of deprivation of father's presence."

Further, only the father's residency *on September 27, 1982* was decided. In his "Findings of Fact," the hearing officer stated: "Based upon the preponderance of the evidence presented at the hearing, it is found that claimant and Richard Rodriguez *are not* residing together." (Italics added.) Under conclusion No. 1 of conclusions of law he found "claimant and Richard Rodriguez *are not* living together." (Italics added.)

Since only a narrow factual issue, the father's residency on September 27, 1982, was decided at the hearing, *Sims* only estops the People from proving the father's residency *on that date.* They are not prevented from showing, if they can, his residency *before* that time.[1]

We note the hearing officer may have inferred the father's absence for some period *before* September 27, 1982. He made no *finding* in this regard,

---

[1]Because collateral estoppel affects a fact of only marginal importance—father's residency on September 27, 1982—we do not find it necessary to discuss the retroactive application of *Sims.* Were we to reach the issue, however, we would hold, since *Sims* represents a clear break with prior law, that its retroactivity should be limited. (*Desist* v. *United States* (1964) 394 U.S. 244 [22 L.Ed.2d 248, 89 S.Ct. 1030]; *Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24 [196 Cal.Rptr. 704, 672 P.2d 110]; *People* v. *Kaanehe* (1977) 19 Cal.3d 1 [136 Cal.Rptr. 409, 559 P.2d 1028].) *Sims* was filed on September 27, 1982 (the same day as respondent's hearing) and became final on October 27, 1982 (Cal. Rules of Court, rule 24 (a).). It should only apply to DSS "fair hearings" held *after* October 27, 1982.

however, thus the doctrine of collateral estoppel as to pre-September residency is not brought in to play.

The judgment is reversed.

Wallin, Acting P. J., and Crosby, J., concurred.