[Crim. No. 13577. Third Dist. June 11, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK ROBERT WILSON, SR., et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976.1 and 976(b), the Introduction, Factual and Procedural Background, first four paragraphs and footnote 4 of part I of Discussion; part II of Discussion and the Disposition are certified for publication. All other parts are not to be published.

COUNSEL

Gerald B. Glazer, under appointment by the Court of Appeal, and Emry J. Allen for Defendants and Appellants.

John K. Van de Kamp, Attorney General, James T. McNally and James Ching, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CARR, J.**—Defendants Frank and Doris Wilson appeal from judgments sentencing Frank to three years imprisonment and Doris to five years pro-

bation after a jury found them guilty of welfare fraud (Welf. & Inst. Code, § 11483); Medi-Cal fraud (Welf. & Inst. Code, § 14014); food stamp fraud (former Pen. Code, § 396); and perjury (Pen. Code, § 118). They contend (1) the state was estopped from criminally prosecuting them as they prevailed at a previous administrative fair hearing; (2) the court improperly denied Frank Wilson's motion for new trial; (3) the court erred in permitting into evidence a document from the files of the Butte County Assessor; (4) the court erred in permitting testimony as to previous "problems" between defendants and the Butte County Welfare Department; and (5) the prosecutor committed numerous acts of prejudicial misconduct. We shall affirm.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 1979, $20,000 was deposited at the Capital Mortgage Company in Colusa, Butte County, in the name of defendants Frank and Doris Wilson. At the same time, Capital Mortgage issued a promissory note for that amount to defendants. Attached to the ledger card for the account was a statement that Capital Mortgage was not to send defendants a monthly statement or correspondence of "any" kind.

In December 1979, Frank Wilson went to Jack Heskett Lincoln-Mercury in Chico to negotiate the purchase of a motor home. Frank agreed to purchase a motor home for $9,000 but requested that the purchase order reflect a sale price of $7,000. While there, Frank had Heskett speak by phone with someone at Capital Mortgage for assurance that the money was available. Frank left and returned with a check for $8,000 and gave Heskett an additional $1,000 in cash. The records of Capital Mortgage reflect that on December 21, 1979, a check was drawn on the account of Frank and Doris Wilson for $8,000, made out to Jack Heskett. The motor home was placed in the names of Frank Wilson and Minnie McMains, Frank's mother.

The balance of the account was periodically reinvested until at least May 25, 1981. By then, it totaled $15,581.24. When defendants went to Capital Mortgage in May 1981 to reinvest the funds, they became upset when they discovered their names had been placed on recorded trust deeds in connection with their investment. They had understood their names would not be placed on any trust deed, but that everything would be handled by numbers.

On May 16, 1980, defendants opened another account with Capital Mortgage in the sum of $2,000. As with the first account, a note was attached

---

[1]This is the second appeal arising out of this case. We dismissed defendants' first appeal (3 Crim. 12487) as one taken from a nonappealable order. When that appeal was taken, defendants had not been sentenced as the court ordered a 90-day diagnostic study pursuant to Penal Code section 1203.03. In this appeal, we have taken judicial notice of the records in the previous appeal.

to the ledger that Capital Mortgage was not to send any statement or correspondence to defendants.

A grant deed recorded with the Butte County Recorder's Office shows that defendants, for valuable consideration, granted to George W. Scott a parcel of real property at 576 East Third Avenue, Chico. Scott purchased the property for $21,500 on July 26, 1979.

During this entire period, defendants received welfare assistance from Butte County. They had done so since 1967.

On March 29, 1979, defendants reapplied for aid and food stamps. Defendants signed a statement of rights and responsibilities and the worker orally discussed with them their reporting responsibilities. This procedure was repeated on January 30, 1980. On February 3, 1981, Doris Wilson filled out and signed another such form and reapplied for food stamps. Frank was receiving Social Security insurance at that time. Because of a misunderstanding on the part of the eligibility worker, she did not have him sign the form.

In addition to the yearly statements, defendants were required to submit monthly statements to the welfare department to determine eligibility for the coming month. Defendants also were required to report any income or any changes in the household within five days.

At each yearly review, defendants were determined to be eligible for aid to families with dependent children (AFDC), Medi-Cal, and food stamps, with the exception of February 3, 1981, when only Doris and the children were deemed eligible. Frank was not eligible because of his Social Security payments. During this period, defendants did not inform the welfare department of their cash investments, the sale of their property, or the purchase of the motor home. If the department had been so informed, defendants would not have received aid.

Upon discovering the Capital Mortgage investments and the motor home, the welfare department, on June 19, 1981, sent notice to Doris Wilson that her AFDC funds and food stamps would be discontinued effective June 30. On June 24, defendants went to the welfare department for an interview. Frank told his eligibility worker that the money in the Capital Mortgage accounts was not his but belonged to his sister, Nikki Smith, for whom he had invested it. He stated she later withdrew $8,000 from the account but did not know why she did so.

Frank was interviewed again on June 30, with the welfare investigator present. Frank explained that his sister had asked him to invest some money

for her in Capital Mortgage. She did not want the account in her name because she was afraid their mother, who also had an account at Capital Mortgage, would discover she had a large sum of money to invest. Apparently, the mother was a personal friend of one of the officers of Capital Mortgage. He was upset when he discovered his name on the trust deeds because "he had told Capital Mortgage that he was on Welfare an he didn't want any trouble and they assured him that his name would not appear on anything." He told the people of Capital Mortgage that "this was to be an 'under-the-table-deal.'" He signed some papers to have new trust deeds prepared without his name appearing.

When the investigator asked Frank what his sister did with the $8,000, Frank responded, "'You will have to ask my sister.'" When the investigator confronted Frank with his knowledge of the motor home purchase, Frank admitted he used the $8,000 to purchase the motor home. He stated he did not want his mother to know about the motor home, although he could not explain why title was also in her name.

On September 16, 1981, the Butte County District Attorney filed complaints against defendants charging each with one count of fraudulently obtaining AFDC funds (Welf. & Inst. Code, § 11483); one count of fraudulently obtaining Medi-Cal funds (Welf. & Inst. Code, § 14014); one count of fraudulently obtaining food stamps (Pen. Code, § 396);[2] and three counts of perjury (Pen. Code, § 118). On February 22, 1982, informations were filed charging defendants with the same three acts of fraud plus twenty-one counts of perjury. In the meantime, the department of social services held a fair hearing at Doris' request. The hearing officer found the deeds of trust in which the funds were invested were valueless as of the time of the proposed discontinuance, June 30, 1981, apparently because of the financial demise of Capital Mortgage. The hearing officer further found Doris' interest in the motor home, if any, was worth $961.50 and that the discontinuance could not be sustained as the value of the assets on the date of discontinuance did not exceed the maximum allowable under department regulations.

As it was unnecessary to the resolution of the case, the hearing officer made no finding as to the actual ownership of the deeds of trust or the motor home. On May 7, 1982, the department of social services adopted the hearing officer's proposed decision.

On the first day of trial, August 16, 1982, the district attorney dismissed counts five through twenty-four, leaving the three fraud counts and one perjury count, and filed amended informations accordingly.

---

[2]Penal Code section 396 has been repealed. (Stats. 1984, ch. 1448.)

At trial, George Scott, on behalf of defendants, testified he did not purchase the property in 1979 from defendants, but from defendants' son, Frank, Jr. Frank, Sr., merely introduced Scott to his son, who wanted to sell the property. Scott put $7,000 in escrow and paid an additional $14,000 in cash.

Frank's sister, Nikki Smith, corroborated the story Frank gave to the welfare authorities. She testified she received the money in question from the sale of jewelry she had obtained as a part-time bail bond agent. She had Frank invest the money for her because she believed her mother would not approve of her selling the jewelry. She initially gave Frank $20,000 to invest in Capital Mortgage and later gave him $2,000. He also purchased the motor home for her, again putting it in his name to avoid detection by their mother.

The jury found defendants guilty on all counts. Defendants made motions for a new trial and, alternatively, relying on *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321],[3] for arrest of judgment on the ground the previous favorable administrative decision collaterally estopped the People from bringing a criminal action. Defendants also raised issues of prosecutorial misconduct and evidentiary errors. The court denied the motions on October 15, 1982, and ordered a 90-day diagnostic study and evaluation for each defendant pursuant to Penal Code section 1203.03.

Defendants appealed the judgments of conviction immediately thereafter. On October 27, 1982, the court ordered a stay of the diagnostic study pending appeal. On September 15, 1983, we granted the People's motion to dismiss the appeals as taken from a nonappealable order.

On February 29, 1984, Frank Wilson made a motion to dismiss the information, again on the ground of collateral estoppel under *People* v. *Sims,* *supra,* 32 Cal.3d 468. This second motion was premised on a favorable ruling by an administrative law judge for the United States Department of Health and Human Services, Social Security Administration on the issue of whether Frank had been overpaid supplemental social security benefits. In a decision submitted on September 7, 1983, the administrative law judge found Frank was acting as an implied agent for his sister when he invested the funds in Capital Mortgage and purchased the motor home. On the same date, Frank moved for a new trial, under Penal Code section 1181, contending, in part, that the decision of the administrative law judge should be admitted into evidence. The court denied both motions.

---

[3]*People* v. *Sims* was filed on September 27, 1982, one month after the verdicts in this case were rendered.

Following completion of the diagnostic studies and receipt of supplemental probation reports, the court sentenced Doris Wilson to two years for each count. Sentences on the fraud counts were stayed pursuant to Penal Code section 654. The court suspended sentence for the perjury conviction and placed Doris on probation for five years. The court sentenced Frank Wilson to two years for each fraud count, staying the sentences pursuant to Penal Code section 654. The court imposed an unstayed sentence of three years imprisonment for the perjury conviction.

DISCUSSION

I

██ Defendants initially contend the state was collaterally estopped from prosecuting them because of the favorable ruling Doris received at the department of social services fair hearing, relying on *People* v. *Sims, supra,* 32 Cal.3d 468.

In *Sims,* our Supreme Court held that in appropriate circumstances collateral estoppel bars the state from prosecuting a person for welfare fraud when he or she has been exonerated of that charge in a department of social services fair hearing. (*People* v. *Sims, supra,* 32 Cal.3d at p. 489.) ██ The prerequisites for collateral estoppel are: " '(1) the issue necessarily decided at the previous [proceedings] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].' " (*Id.,* at p. 484; fn. omitted.)

As the Supreme Court observed, "[i]t is implicit in this three-prong test that only issues actually litigated in the initial action may be precluded from the second proceeding under the collateral estoppel doctrine. [Citation.] An issue is actually litigated '[w]hen [it] is *properly raised,* by pleadings or otherwise, and is submitted for determination, and is *determined . . . .* A determination may be based on a *failure of . . . proof . . . .'* [Citation.]" (*Ibid.;* original italics.) In *Sims,* the court held collateral estoppel barred the state from prosecuting the defendant for welfare fraud as the hearing officer's decision was conclusive on that issue. (*Id.,* at p. 488.)

██ In denying defendants' first motions for new trial, the trial court concluded *Sims* did not bar the criminal prosecution as the issues of fraud and perjury presented at trial were not presented or determined in the fair hearing. We agree. The issues in the fair hearing were whether the county correctly proposed to discontinue Doris' aid because of excess personal

property and the transfer of personal property without consideration for the purpose of qualifying for aid. The hearing officer based his decision in favor of Doris *solely* on the determination that the deeds of trust were valueless *at the time of the proposed discontinuance* and that the value of her interest, if any, in the motor home did not exceed the maximum allowable under the regulations. No determination was made of the value of the assets before the proposed termination date and the hearing officer expressly refrained from determining whether Doris actually owned the assets in question as it was unnecessary to the resolution of the case. Nor did the hearing officer determine if defendants committed fraud or perjury when they applied for and received welfare benefits as those issues were not before him. We conclude the fair hearing decision did not estop the state from prosecuting defendants for welfare fraud and perjury.[4]

. . . . . . . . . . . . . . . . . . . . . . . .*

## II

Defendants further contend the court erred in denying Frank Wilson's second motion for new trial, in which he sought to have introduced as evidence the favorable decision of the administrative law judge of the Social Security Administration. Frank contends this is "newly discovered evidence" which undermines the prosecution's entire case, entitling him to a new trial. (*In re Hall* (1981) 30 Cal.3d 408, 415 [179 Cal.Rptr. 223, 637 P.2d 690].) We disagree.

A motion for new trial based on newly discovered evidence is disfavored, and a denial of the motion will not be disturbed on appeal unless a clear abuse of discretion is shown. (*People* v. *McDaniel* (1976) 16 Cal.3d 156, 179 [127 Cal.Rptr. 467, 545 P.2d 843].) To justify a new trial on newly discovered evidence, defendant must show "the evidence is in fact newly discovered; that it is not merely cumulative to other evidence bearing on the factual issue; that it must be such as to render a different result probable on retrial; and that the moving party could not, with reasonable diligence, have discovered and produced the evidence at trial." (*Id.,* at p. 178.)

Even accepting the doubtful proposition that the decision of the administrative law judge may properly be considered "evidence," we fail to see it's relevancy. Nor can we determine from the administrative law

---

[4]In view of our conclusion, it is unnecessary to decide whether *Sims* applies retroactively. (See *People* v. *Rodriguez* (1984) 160 Cal.App.3d 650, 655, fn. 1 [206 Cal.Rptr. 79].)

*See footnote, *ante,* page 1149.

judge's statement of decision whether he even considered the same evidence as was presented to the jury. The only persons who testified at this administrative hearing were Frank Wilson and his sister, Nikki Smith. Moreover, any evidentiary value of the administrative decision is completely undermined by the administrative law judge's subsequent proposal to reverse his original decision. Apparently, Frank did not inform the judge of his convictions in the present case. Upon learning of them, the judge proposed to find that Frank's testimony was not credible and that he was overpaid supplemental security benefits.

Defendants contend the Social Security Administration decision is admissible under the authority of *People* v. *Sims, supra,* 32 Cal.3d 468. *Sims* is addressed exclusively to the collateral estoppel effect of *prior* administrative decisions. Collateral estoppel is a rule designed to insure finality of judgments and prevent multiple vexatious litigation and waste of judicial resources (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 147); it is not a rule of evidence.

Finally, we note that when Frank sought a new trial, the decision was not final, the matter having been reopened by the administrative law judge for the purpose of reversing the original decision. *Sims* requires a final judgment on the merits. (32 Cal.3d at p. 484.) Nor was the district attorney a party or in privity with a party to the social security proceeding. In *Sims,* the court concluded the county welfare department and the district attorney were in privity because they were both agents of the same government, the state, making them "sufficiently close" to warrant applying collateral estoppel. (*Id.,* at p. 487.) No such relationship exists here. The Social Security Administration and the district attorney represent two different governments, federal and state, respectively.

The trial court did not abuse its discretion in denying Frank Williams second motion for new trial.

III*

· · · · · · · · · · · · · · · · · · · · · ·

### DISPOSITION

The judgments are affirmed.

Regan, Acting P. J., and Blease, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 18, 1985. Mosk, J., was of the opinion that the petition should be granted.