[No. A030820. First Dist., Div. Three. July 30, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES L. MEYER, Defendant and Appellant.

## COUNSEL

Celia Del Mutolo Brown, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WHITE, P. J.**—Charles Meyer appeals from a judgment of conviction upon a plea of guilty of welfare fraud. (Welf. & Inst. Code, § 11483.) Appellant

alleges the following: (1) his motion to suppress should have been granted because the affidavit supporting the search warrant failed to set forth sufficient facts to permit a finding of probable cause; (2) the trial court erred in denying appellant's motion to traverse the search warrant because (a) there were false statements in the affidavit, and (b) some of the evidence included in the affidavit was obtained in violation of the Fourth Amendment; and (3) the trial court erred in denying appellant's motion to dismiss based upon grounds that (a) the district attorney was collaterally estopped from relitigating issues decided in the administrative hearing, and (b) the district attorney failed to bring an action for restitution before pressing criminal charges. We affirm the judgment of the trial court for reasons which we will explain.

### Statement of Facts

In December 1981 appellant, Charles Meyer, applied for welfare benefits within the program of aid to families with dependent children (AFDC). Appellant and his family received public aid through early 1983. In April 1983, a welfare eligibility worker requested an investigation of his file because she suspected that he operated a business called "Trucker's Delight," which he had not reported. Following a year-long investigation, the Department of Social Services (DSS) investigator obtained a warrant to search appellant's home for records relating to unreported income for the period which appellant received AFDC. The search warrant was executed on March 12, 1984.

At one point during the above-described investigation, the investigator saw appellant in an automobile which appellant had told the DSS he had sold a few years earlier. He also noticed that the registration stickers on the car were up to date, but he was aware that the car's registration had expired. The investigator asked a police officer to effect a traffic stop to determine who owned the car. When the officer pulled appellant over and did a warrant check, he discovered that there were four outstanding warrants against appellant. The officer told the investigator that appellant paid field bail in the amount of $488.50, and that he observed that appellant had at least fifteen $100 bills left in his wallet. This report prompted the DSS to notify appellant that they were going to discontinue his benefits. Appellant requested a "fair hearing" pursuant to Welfare and Institutions Code section 10950 to challenge the propriety of the county's action.

Two days after the search warrant was executed, on March 14, 1984, the DSS held the requested hearing. The county presented only the written police report as evidence. Appellant claimed at the hearing that he was carrying only $800 in cash on the day he was pulled over. The county did

not present any other evidence discovered as a result of the investigation of appellant's case. The hearing officer concluded that the county had failed to sustain its burden of proof, and to conduct a thorough investigation of the case and incident, therefore, it ordered the county to rescind its notice proposing to discontinue appellant's benefits.

On March 30, 1984, the investigator filed a report with the district attorney's office. Appellant was charged with two counts of welfare fraud, and one count of fraudulently obtaining food stamps. Appellant moved to dismiss the charges on grounds that the district attorney was collaterally estopped to bring charges since appellant had been exonerated at the administrative hearing, and also because the district attorney failed to seek restitution before filing charges. The trial court denied the motions. Appellant also moved to suppress the evidence discovered as a result of the search of appellant's home. This motion, too, was denied. On December 7, 1984, appellant pled guilty to one count of welfare fraud. Appellant was sentenced to the midterm of two years in state prison. The trial court granted appellant's motion for a certificate of probable cause, and this appeal followed.

## Discussion

1. The appealability of appellant's claims.

■ Although neither party to this appeal has raised the issue, we must determine at the outset which, if any, of the issues raised are properly cognizable on appeal following a guilty plea. Section 1237.5 of the Penal Code provides the following: "No appeal shall be taken by a defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; and [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."

■ "It has been held that section 1538.5, subdivision (m), which provides that search and seizure issues may be raised on appeal after a plea of guilty, constitutes an exception to section 1237.5. [Citation.]" (*People v. Kaanehe* (1977) 19 Cal.3d 1, 8 [136 Cal.Rptr. 409, 559 P.2d 1028].) Therefore, appellant's claims regarding the trial court's denial of his motions to suppress and to traverse the search warrant are cognizable.

The courts have also held that section 1237.5 does not apply where the defendant does not challenge the original validity of the plea but asserts

that errors were committed in proceedings subsequent to the plea for the purpose of determining the penalty to be imposed. (*Ibid.*; *People* v. *Ward* (1967) 66 Cal.2d 571, 574 [58 Cal.Rptr. 313, 426 P.2d 881].) This exception is now also expressly recognized in rule 31(d) of the California Rules of Court. None of this appellant's claims falls under this exception.

The remaining question is whether under section 1237.5 appellant's contentions that the trial court erred in denying his motions to dismiss upon grounds of collateral estoppel and the failure of the prosecution to seek restitution are cognizable. Appellant did obtain the required certificate of probable cause from the trial court. "Obtaining a certificate of probable cause [however] does not make cognizable those issues which have been waived by a plea of guilty. (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 9.)" (*People* v. *Hayton* (1979) 95 Cal.App.3d 413, 416 [156 Cal.Rptr. 426].) We must test the issues raised by appellant under the language of section 1237.5, which states that only "constitutional, jurisdictional, or other grounds going to the legality of the proceedings," survive a guilty plea.

In *People* v. *Durrett* (1985) 164 Cal.App.3d 947 [210 Cal.Rptr. 874], the court held that a challenge to the restitution requirements of section 11483 of the Welfare and Institutions Code is a "'ground[] going to the legality of the proceedings'" under Penal Code section 1237.5, and that it, therefore, may be asserted on appeal following a guilty plea. (*Id.*, at p. 953.) Thus, appellant's restitution claim may be reviewed.

Finally, we face an issue of first impression: whether the phrase "other grounds going to the legality of the proceedings" includes a claim of collateral estoppel. For the following reasons we conclude that it does, and that the issue is therefore properly asserted on appeal following a plea of guilty.

■ By pleading guilty, a defendant admits the sufficiency of the evidence establishing the crime, and is therefore not entitled to a review on the merits. (*People* v. *Padfield* (1982) 136 Cal.App.3d 218, 227 [185 Cal.Rptr. 903]; *People* v. *Ribero* (1971) 4 Cal.3d 55, 63 [92 Cal.Rptr. 692, 480 P.2d 308].) "[I]ssues which merely go to the guilt or innocence of a defendant are 'removed from consideration' by entry of the plea." (*People* v. *Shults* (1984) 151 Cal.App.3d 714, 719 [199 Cal.Rptr. 33].) Thus, claims involving sufficiency of the evidence (*People* v. *Warburton* (1970) 7 Cal.App.3d 815 [86 Cal.Rptr. 894]), voluntariness of an extrajudicial statement (*People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872]), a trial court's refusal to disclose the identity of an informant (*People* v. *Barkins* (1978) 81 Cal.App.3d 30, 33 [145 Cal.Rptr. 926]), fairness of a pretrial lineup (*People* v. *Stearns* (1973) 35 Cal.App.3d 304, 306 [110

Cal.Rptr. 711]), and other such issues have been held not cognizable on appeal following a guilty plea. The following particular errors have been reviewed following a plea of guilty: insanity at the time of the plea (*People* v. *Laudermilk* (1967) 67 Cal.2d 272, 282 [61 Cal.Rptr. 644, 431 P.2d 228]); ineffective assistance of counsel (*People* v. *Natividad* (1963) 222 Cal.App.2d 438, 441 [35 Cal.Rptr. 237]); ineffective waiver of constitutional rights (*People* v. *Navarro* (1966) 243 Cal.App.2d 755, 758 [52 Cal.Rptr. 686]; erroneous denial of pretrial diversion right (*People* v. *Padfield, supra,* 136 Cal.App.3d 218, 228); failure of prosecution to seek restitution before filing criminal charges in a welfare fraud case (*People* v. *Durrett, supra,* 164 Cal.App.3d 947, 955); violation of Interstatement Agreement on Detainers which bars prosecution (*People* v. *Cella* (1981) 114 Cal.App.3d 905, 915, fn. 5 [170 Cal.Rptr. 915]).

 In *People* v. *Padfield, supra,* 136 Cal.App.3d 218, the court reasoned that "[s]ince a factually guilty but otherwise eligible defendant is entitled to be diverted, his plea of guilty cannot be deemed a waiver of his asserted but denied right to diversion. We hold therefore that the wrongful denial of pretrial diversion constitutes 'other grounds going to the legality of the proceedings' (Pen. Code, § 1237.5), and may be raised on appeal by a certificate of probable cause after a plea of guilty or nolo contendere." (*Id.,* at p. 228, fn. omitted.) Similarly, the court in *People* v. *Durrett, supra,* 164 Cal.App.3d 947, held that since the requirement of demanding and considering restitution under Welfare and Institutions Code section 11483 has nothing to do with the accused's guilt or innocence, failure to do so implicates "'other grounds going to the legality of the proceedings'" under Penal Code section 1237.5, and is cognizable on appeal after a plea of guilty. (*Id.,* at p. 955.)

The issue of collateral estoppel also does not involve a party's guilt or innocence, rather it is a doctrine which seeks to (a) avoid repetitive litigation of a single issue, (b) conserve judicial resources, and (c) prevent inconsistent decisions and thereby encourage reliance on adjudication. (*Allen* v. *McCurry* (1980) 449 U.S. 90, 94 [66 L.Ed.2d 308, 313, 101 S.Ct. 441].) In *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321], the California Supreme Court held that a Department of Social Services fair hearing decision exonerating a defendant of welfare fraud collaterally estopped the prosecutor from pursuing a criminal action against respondent for the same alleged misconduct. (*Id.,* at p. 489.) The court noted that giving conclusive effect to the DSS hearing would promote judicial economy by minimizing repetitive litigation, would eliminate the possibility of inconsistent judgments which may undermine the integrity of the judicial system, would maintain the value of the fair hearing determination, and would avoid

subjecting an exonerated defendant to a second proceeding in which he or she must defend himself or herself against the same charges of misconduct.

Since the doctrine of collateral estoppel is predicated on policy reasons which do not involve the guilt or innocence of the party, and in fact may be asserted by a factually guilty defendant, we find that the defendant's plea of guilty cannot be deemed a waiver of his or her asserted but denied right to have the charges dismissed on grounds of collateral estoppel. We hold that the wrongful denial of an appellant's motion to dismiss on grounds of collateral estoppel is included in the phrase "other grounds going to the legality of the proceedings" pursuant to Penal Code section 1237.5.

Having concluded that all of appellant's claims are reviewable on appeal following his guilty plea, we turn to addressing the merit of each claim.

2. There was sufficient probable cause to support the search warrant.

Appellant first contends that the affidavit supporting the search warrant failed to provide sufficient facts to support a determination of probable cause by the issuing magistrate. We disagree.

We observe at the outset that as a result of Proposition 8, approved by the voters of this state on June 8, 1982, evidence seized as a result of an illegal search will be excluded only if federal law so mandates. (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744].)[1]

In *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317], the United States Supreme Court abandoned the two-prong *Aguilar-Spinelli* test for determining probable cause,[2] and substituted a more flexible "totality of the circumstances" test. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is

---

[1] Proposition 8 added article I, section 28, subdivision (d) to the California Constitution, which read in pertinent part: "relevant evidence shall not be excluded in any criminal proceeding."

[2] The *Aguilar-Spinelli* test provided that the affidavit may be based on hearsay information and need not reflect the direct personal observation of the one making the affidavit if: (1) the affidavit contains some of the underlying circumstances from which the informant concluded what he or she did, and (2) the affidavit contains some reasons to believe the informer himself or herself is credible or his or her information reliable. (*Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584].)

simply to ensure that the magistrate had a 'substantial basis for . . . concluding' that probable cause existed." (*Id.,* at p. 238 [76 L.Ed.2d at p. 548].)

██ In the instant case, the following facts were included in the affidavit supporting the search warrant: (1) appellant applied for AFDC on December 21, 1981; (2) a welfare eligibility worker requested an investigation in April 1983 because she suspected that appellant owned a business known as Trucker's Delight which he had not reported; (3) when appellant submitted cancelled checks from the Trucker's Delight bank account as requested by the investigator, the signature on the checks had been partially removed; (4) a documents examiner who examined the checks advised the investigator that the checks had been signed by appellant; (5) the investigator discovered that the title documents to Trucker's Delight were in Dale Chaffin's name, who is appellant's stepson; (6) the State Board of Equalization records showed that a business permit for Trucker's Delight had been issued to appellant, as owner; (7) a former employee of Trucker's Delight stated that she had been employed by appellant, not by Dale Chaffin; (8) Dale Chaffin applied for welfare benefits on December 22, 1983, at which time he advised the eligibility worker that Trucker's Delight was closed; (9) Dale Chaffin authorized the welfare department to inspect the Trucker's Delight bank account in order to verify that it was no longer in business; (10) in December 1983 or January 1984, the investigator reviewed Dale Chaffin's bank records, and discovered that appellant had been listed as a signator and partner on the Trucker's Delight bank account from July 1982 until April 20, 1983; (11) the bank records also revealed a $6,700 deposit into the Trucker's Delight account from appellant's account during that period; (12) the Lake County Superior Court files revealed a lawsuit filed by appellant against an insurance company for medical and personal property damages, including $3,500 damage to appellant's automobile; (13) appellant had informed the welfare department that he had sold that car three years earlier for $750; (14) in February 1984, the investigator observed appellant's car in the parking lot of the welfare department, and he noticed a 1983 registration sticker on the license plate, but was aware that the vehicle's registration had expired in 1981; (15) the investigator requested a police officer to effect a traffic stop on appellant in order to verify ownership of the vehicle; (16) when the officer checked the registration, he discovered four outstanding warrants against appellant; (17) the officer told the investigator that appellant paid field bail in the amount of $488.50, and that he observed at least 15 additional $100 bills in appellant's wallet; and (18) in February 1984 appellant's attorney told the investigator that appellant had received a partial payment in the amount of $4,433.61 in September 1983, which appellant had not reported to the welfare department.

The issue is whether those facts create a substantial basis for the magistrate *to conclude that evidence tending to prove that appellant obtained AFDC* by means of false statements or representations, in violation of section 11438 of the Welfare and Institutions Code, would be found in appellant's residence. We find the plethora of facts revealed by the affiant's investigation and included in the affidavit sufficient to create a substantial basis for the magistrate's conclusion, and we conclude, therefore, that the trial court did not err in denying appellant's motion to suppress on this ground.

3. The trial court correctly denied appellant's motion to traverse the search warrant.

a. Appellant's claim that the search warrant was invalid due to misstatements in the affidavit is without merit.

Next we consider appellant's claim that the trial court erred in denying his motion to traverse the search warrant. Appellant claims that several alleged misstatements in the affidavit supporting the warrant render the warrant invalid.

■ Under the federal standard enunciated in *Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674], a criminal defendant may not challenge negligent misstatements or omissions in the affidavit. Upon making a prima facie showing that the affidavit contains intentionally and knowingly made misstatements, however, the defendant will be accorded a hearing on the matter. If at the hearing, the trial court rules that the defendant's claim of intentional misstatements is true, then those misstatements are excised from the affidavit, and the facts are retested for probable cause. Similarly, if the defendant makes a prima facie showing that a material fact was omitted knowingly or intelligently by the affiant, he or she may request a hearing on the matter. If the defendant proves his or her claim, the omitted statement will be added to the affidavit and the facts will be retested for probable cause. (*United States* v. *Flores* (9th Cir. 1982) 679 F.2d 173.)

■ Appellant cites several alleged misstatements in the affidavit. First, he complains that the affiant improperly omitted the fact that when appellant received $4,433.61 partial payment for his auto accident, he was no longer receiving aid, and therefore had no duty to report the income. The People refute the need to include this fact by noting that although appellant was no longer receiving AFDC, he did have a claim with the welfare department for past medical expenses. Since appellant had applied for post Medi-Cal aid, he was under an obligation to report the income, and therefore his

argument fails. Additionally, we note that the affiant did mention the dates during which appellant received AFDC in the beginning of the affidavit.

Second, appellant argues that the affiant did not have personal knowledge that appellant keeps business records in his home. This is not a misstatement of fact but a logical, commonsense assumption. The trial court stated: "The court accepts as a matter of common knowledge that individuals frequently, if not always, keep personal and business records of the kind herein sought to be seized in their residences. The law does not require actual knowledge that such records existed or were in fact kept in a particular residence." We agree with the trial court; the *Gates* standard does not require the affiant to produce personal knowledge that contraband or evidence of a crime will be found at the location to be searched, rather it requires that the affiant bring forth enough facts to create a substantial basis for the magistrate to draw that conclusion.

Third, appellant challenges the affiant's statement that "appellant occasionally carries more than $1000 on his person," in light of the ruling by the administrative hearing officer that appellant had only $800 in cash when he was stopped by the police officer. The affiant's statement was based on a police report in which the officer claimed that he observed at least $1,500 in appellant's wallet. The hearing at which it was determined that appellant was only carrying $800, took place *after* the affiant obtained the search warrant. We do not view the affiant's statement as intentionally false or even negligently made; we therefore reject appellant's claim.

Finally, appellant claims that the affidavit falsely identifies Patricia Carver, a former employee of Trucker's Delight, as a citizen informant. Appellant argues that instead, she is a "biased informant." Appellant presents no facts to support his claim that Patricia Carver was not a citizen informant. The burden of invalidating a search warrant is on the defendant (*Williams* v. *Justice Court* (1964) 230 Cal.App.2d 87 [40 Cal.Rptr. 724]); appellant has not met his burden on this claim.

b. Appellant may not challenge the Trucker's Delight bank account search.

■ Appellant argues that the search of the Trucker's Delight bank account was illegal because although the investigator obtained written consent from the sole signator on the account, Dale Chaffin, he did not comply fully with the statutory requirements of the California Right to Financial Privacy Act. (Gov. Code, § 7460 et seq.)

Specifically, the investigator failed to comply with two provisions of the act. Government Code section 7473, subdivision (c), requires that the bank

customer receive a written notification of his or her right to revoke authorization at any time. Dale Chaffin was not so notified. Second, subdivision (d)(1) of section 7473 mandates that upon examination of the customer's records, the governmental agency notify the bank customer in writing within 30 days. The investigator did not notify Dale Chaffin of the examination of his bank records as required.

Section 7489 of the Act provides that "evidence obtained in violation of this chapter is inadmissible in any proceeding . . . ." Appellant argues, therefore, that the evidence discovered during that search was inadmissible. The trial court admitted the evidence, reasoning that the effect of Government Code section 7489 was abrogated by Proposition 8.

We find the evidence admissible. As previously mentioned, as a result of Proposition 8, the admissibility of evidence obtained as a result of an illegal search, depends on the federal rules of exclusion. (*In re Lance W., supra,* 37 Cal.3d 873.) Federal law does not provide appellant with a remedy for the search of Dale Chaffin's bank records.

■ First, appellant may not assert a violation of the Fourth Amendment since his personal rights were not violated. Appellant was no longer a signator on the account when the search was executed. Appellant, therefore, had no legitimate expectation of privacy in those bank records. Under federal law, Fourth Amendment rights may not be vicariously asserted. (*Rakas* v. *Illinois* (1978) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421]; *United States* v. *Salvucci* (1980) 448 U.S. 83 [65 L.Ed.2d 619, 100 S.Ct. 2547]; *In re Lance W., supra,* 37 Cal.3d 873, 882.)

■ Second, in *United States* v. *Miller* (1976) 425 U.S. 435 [48 L.Ed.2d 71, 96 S.Ct. 1619], the Supreme Court held that business records kept by banks are the bank's records, not the customer's private papers. The court reasoned that the bank customer has no legitimate expectation of privacy in those records since they are not confidential communications but negotiable instruments to be used in commercial transactions voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business. The court concluded that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to government authorities. In light of *Miller,* neither Dale Chaffin nor appellant had a legitimate expectation of privacy in the bank records, and neither may assert his Fourth Amendment rights.

We conclude, therefore, that the trial court properly denied appellant's motion to suppress.

4. The district attorney was not collaterally estopped from bringing criminal charges.

 Appellant alleges that the district attorney was precluded from bringing criminal charges after the county's administrative body had exonerated him at the fair hearing. Appellant relies on a California Supreme Court case entitled *People* v. *Sims, supra,* 32 Cal.3d 468 for that proposition. In *Sims,* the defendant was notified by the Department of Social Services that her AFDC benefits would be discontinued because DSS had learned that the defendant had remarried and that her current husband had been living with her and earning money while she was receiving government aid. Ms. Sims requested a fair hearing. At the hearing the county refused to present evidence, contending that the administrative body lacked jurisdiction since criminal charges were pending. The hearing officer exonerated Sims of the charges and ordered the county to withdraw its notice of proposed discontinuance of her benefits. The criminal charges were based on the identical factual allegation: that Sims had failed to report that she had remarried and that her husband was living with her and earning money while she received aid. Sims moved to dismiss the criminal charges claiming that the district attorney was collaterally estopped from proceeding after she was exonerated at the hearing. The trial court granted her motion to dismiss. The county appealed; the Supreme Court affirmed the trial court's dismissal of the case. The court noted: "Collateral estoppel precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding. [Citations.]" (*People* v. *Sims, supra,* 32 Cal.3d at p. 477.) The court found that a fair hearing conducted by the DSS pursuant to section 10950 of the Welfare and Institutions Code satisfied the U.S. Supreme Court test in *United States* v. *Utah Constr. & Mining Co.* (1966) 384 U.S. 394 [16 L.Ed.2d 642, 86 S.Ct. 1545], set out for determining whether collateral estoppel may be applied to decisions made by administrative agencies. (*Sims, supra,* 32 Cal.3d at pp. 479-481.) The court then turned to the three-prong test used for determining when the doctrine of collateral estoppel applies to a particular case: "Traditionally, collateral estoppel has been found to bar relitigation of an issue decided at a previous proceeding 'if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].'" (*Id.,* at p. 484, fn. omitted.) The court concluded that all three parts of the test were satisfied and therefore that the prosecutor was collaterally estopped from filing the criminal charges after Sims had been exonerated by the administrative body.

The court stressed the importance of the fact that the complaint was based on the "same allegations of fraud that were the subject of the County's

'Notice of Action.'" (*Sims, supra,* at p. 473.) Again on page 485, the court stated: "In the criminal prosecution, the *identical factual allegations* were in issue." (Italics added.)

In *People* v. *Rodriguez* (1984) 160 Cal.App.3d 650 [206 Cal.Rptr. 79], the court found that the issue before the DSS hearing officer there was whether the defendant's benefits should be terminated, not whether the defendant had committed fraud. The court also concluded that the issue decided at the hearing was limited to whether the child's father was *currently* residing in the household, not whether he had been living there before the hearing. The court held, therefore, that the prosecutor was not collaterally estopped from proving that the defendant had defrauded the DSS. (*Id.,* at p. 654.)

In *People* v. *Wilson* (1985) 169 Cal.App.3d 1149 [215 Cal.Rptr. 694], the court found that the only issue decided at the fair hearing was whether the county correctly proposed to discontinue the defendant's benefits because of excess personal property, and the transfer of personal property without consideration for the purpose of qualifying for aid. The court found that at the hearing the officer concluded only that the property involved was valueless at the time of the hearing and thus the prosecutor was not collaterally estopped from proving that at other times the defendant had resources in excess of the statutory limitations. (*Id.,* at p. 1157.)

In the instant case, the DSS hearing decision states that the county proposed to discontinue appellant's benefits based on the following factual allegation: that appellant had over $1,500 of unreported money in his possession when he was pulled over by the police officer on February 13, 1984. The hearing officer made the following finding of fact in his decision: "Based on the evidence presented at the hearing, it is found that on February 13, 1984, when stopped by a police officer, the claimant had approximately $800 in cash in his possession." Consequently, the hearing officer ordered the county to "rescind its February 14, 1984 notices proposing to discontinue [appellant's benefits]."

When ruling on appellant's motion to dismiss, the trial court stated that "the People rely upon many claims not presented in the administrative hearing, *some of which were not even known to the prosecution at that time.* Included among these additional matters, the most substantial appears to be the receipt of money by [appellant] pursuant to a disability insurance policy with Bankers Life."[3] The prosecution would have been collaterally

---

[3] The investigator subsequently discovered that appellant had received monthly disability payments in the amount of $2,000 through October 1982; in November 1982 he received a settlement of $24,000.

estopped, under *Sims,* from proving at trial that appellant had more than $800 on him when he was stopped on February 13, 1984.

We find, however, that the district attorney was not estopped from charging appellant with welfare fraud based upon factual allegations which were not actually litigated at the fair hearing. Thus, the trial court's denial of appellant's motion to dismiss is affirmed.

5. The district attorney was not bound to seek restitution before filing criminal charges in this case.

■■■ Finally, appellant alleges that the trial court erred in denying appellant's motion to dismiss for failure of the county to send a demand letter seeking restitution before the district attorney filed criminal charges.

Section 11483 of the Welfare and Institutions Code provides in part that "whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall be punished. . . . When the allegation is limited to failure to report *not more than two thousand dollars ($2,000)* of income or resources, . . . all actions necessary to secure restitution shall be brought against persons in violation of section 10980." (Italics added.) In the present case, the allegation in the information is not limited to $2,000; in fact, the allegations made by the prosecutor involved amounts much larger than $2,000; therefore, it was not necessary for the prosecution to seek restitution before filing criminal charges. (*People v. Sims, supra,* 32 Cal.3d 468, 475, fn. 4.) The trial court properly denied the motion.

*Conclusion*

The judgment is affirmed.

Barry-Deal, J., and Merrill, J., concurred.