Filed 7/22/13  P. v. Miranda-Retana CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>VICTORINO MIRANDA-RETANA,<br><br>        Defendant and Appellant. | A137202<br><br>(Sonoma County<br>Super. Ct. No. SCR-611499) |

By plea of no contest, appellant Victorino Miranda-Retana was convicted of assault with intent to commit oral copulation on a minor (Pen. Code, § 220, subd. (a)(2))[1] and of a misdemeanor charge of annoying or molesting a second minor (§ 647.6, subd. (a)(1)).  A condition of his plea was that he would receive a maximum determinate term of seven years in state prison.  The court ultimately sentenced him to the maximum agreed upon sentence of the midterm of seven years for the felony count and a concurrent one-year sentence on the misdemeanor charge.

Assigned counsel has submitted a *Wende*[2] brief, certifying that counsel has been unable to identify any issues for appellate review.  Counsel also has submitted a declaration confirming that Miranda-Retana has been advised of his right to personally file a supplemental brief raising any points which he wishes to call to the court's

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *People v. Wende* (1979) 25 Cal.3d 436.

1

attention.  No supplemental brief has been submitted.  As required, we have independently reviewed the record.  (*People v. Kelly* (2006) 40 Cal.4th 106, 109–110.)

We find no error and affirm.

## I. BACKGROUND[3]

*John Doe I*

Fifteen-year-old John Doe I was interviewed by Santa Rosa police on December 21, 2011, at 8:30 p.m. at Kaiser Hospital.  Doe I said that earlier that day, while waiting for a bus at the downtown Santa Rosa transit mall between A Street and Santa Rosa Avenue, he saw Miranda-Retana, dressed as a woman, exit a bus and then disappear.  A short time later, Doe I saw Miranda-Retana standing near a construction area.  Doe I said Miranda-Retana motioned toward him, directing him to walk towards Miranda-Retana.  Once close to Miranda-Retana, Doe I was immediately grabbed by the arm and forcibly pushed against a chain link fence, with his face hitting the fence.  Doe I could see Miranda-Retana's pants down around his ankles.  Miranda-Retana grabbed Doe I's arms, pinning them to his side.  Miranda-Retana pulled Doe I's pants down to his knees and grabbed him by his hips, pushing Doe I's penis into Miranda-Retana's groin area as he began making thrusting movements.  Doe I attempted to free himself, but was unable to do so.  Doe I was uncertain if he actually penetrated Miranda-Retana.  Doe I said that Miranda-Retana also orally copulated him and the incident lasted several seconds.  When Doe I attempted to leave, Miranda-Retana grabbed his sweater and Doe I struck Miranda-Retana in the face, causing him to stumble back.  Doe I pulled up his pants, grabbed his backpack and fled.

---

[3] Although Miranda-Retana's brief cites to conflicting evidence in Doe I's testimony, the sufficiency of the evidence to support the convictions is not, and cannot be in dispute.  " '[I]ssues which merely go to the guilt or innocence of a defendant are "removed from consideration" by entry of the plea.' [Citation.]" (*People v. Meyer* (1986) 183 Cal.App.3d 1150, 1157.)  We summarize the relevant facts of the underlying offenses from the probation officer's presentence report and refer to the preliminary hearing testimony where necessary.

Miranda-Retana was contacted by police officers in the vicinity of the transit mall shortly after the interview with Doe I. Miranda-Retana initially denied being at the transit mall, but then said that he had gone to the transit mall to use the restroom only to find the restrooms locked. He walked across the street to urinate. While urinating, Miranda-Retana was approached by Doe I who asked if he wanted to perform oral sex. He said that Doe I then removed his penis from his pants and began putting it in Miranda-Retana's face. Miranda-Retana first denied that Doe I put his penis in Miranda-Retana's mouth, but later admitted that Doe I's penis was in his mouth for at least a few seconds. Miranda-Retana denied that there was any other sexual penetration.

*John Doe II*

On the same day, at approximately 9:00 p.m., Santa Rosa police received a report of a second possible sexual battery at the transit mall. Upon arrival, the investigating officer met with 15-year-old John Doe II. Doe II was at the Santa Rosa transit mall at about 7:00 p.m. waiting for a bus to ride home. He observed Miranda-Retana, dressed as a woman, also waiting for the bus. Both got on the same bus. Miranda-Retana originally sat near the front of the bus, but moved to sit across the aisle from him, in the same row. Doe II said that Miranda-Retana's actions made him uncomfortable, and he believed Miranda-Retana was looking at him. Miranda-Retana exited the bus when Doe II did and asked Doe II for the time and his name. Doe II attempted to walk around Miranda-Retana. Miranda-Retana stuck out his hand and rubbed Doe II's stomach. Doe II stepped back and began to yell at Miranda-Retana, who was rubbing his own crotch area while muttering something Doe II could not understand.

*Procedural History*

On April 17, 2012, Miranda-Retana was charged in a four-count information with oral copulation by force with a minor (§ 288a, subd. (c)(2); count 1); assault with intent to commit oral copulation (§ 220, subd. (a); count 2); false imprisonment (§ 236; count 3); and with lewd conduct on a child of 14 or 15 years by a person at least 10 years older than the child (§ 288, subd. (c)(1); count 4). Miranda-Retana was given notice in the information that count 1 was a serious felony (§ 1192.7, subd. (c)), that certain of the

3

charges required mandatory life-time sex offender registration (§ 290); that he could be subject to blood testing for acquired immune deficiency syndrome (§ 1202.1); and that the results of such testing were subject to disclosure to victims and to prison authorities (§ 1524.1; Health & Saf. Code, § 121055).

On September 19, 2012, Miranda-Retana made a *Marsden* motion[4] seeking to discharge his appointed counsel. After an in camera hearing, Miranda-Retana withdrew the motion.

On September 21, 2012, pursuant to plea agreement, the information was amended to modify count 2 to allege assault with intent to commit oral copulation on a minor (§ 220, subd. (a)(2)) and to add as count 5 a misdemeanor charge of annoying or molesting a minor (§ 647.6, subd. (a)(1)). Miranda-Retana, represented by counsel, and with the assistance of a Spanish language interpreter, executed a written waiver of rights and entered a plea of no contest plea to counts 2 and 5 of the amended information. All remaining counts, enhancements and special allegations were to be dismissed. It was agreed that Miranda-Retana would receive a maximum determinate term of seven years as a result of this plea. The court said that it would consider imposition of the lower term of five years, dependent upon the court's consideration of all of the evidence at the time of sentencing, including any psychological evaluation of Miranda-Retana. Miranda-Retana was also advised in English and Spanish of the immigration consequences of his plea.

Miranda-Retana was sentenced on November 15, 2012. The probation department recommended imposition of the upper prison term of nine years. A psychological report prepared for the defense by Ricardo Weinstein, Ph.d., was submitted to the court, diagnosing Miranda-Retana with major depressive and post traumatic stress disorders, and opining that Miranda-Retana was not violent or predatory.[5] Miranda-Retana's

---

[4] *People v. Marsden* (1970) 2 Cal.3d 118.

[5] The probation department administered a Static 99-R test designed to measure the risk of sexual offense recidivism. While the test itself is not included in the record,

counsel submitted a detailed sentencing brief, attaching several letters of support for Miranda-Retana, and requesting imposition of only the lower term. Miranda-Retana personally addressed the court. The sentencing court also had the benefit of having heard the preliminary hearing testimony.

The court stated that it was not convinced that Miranda-Retana would not pose a danger, found that this was not an unusual case that would permit the grant of probation, and determined that Miranda-Retana was therefore ineligible for probation (§ 1203.065, subd. (b); Cal. Rules of Court, rule 4.413). The court imposed the seven-year midterm state prison sentence for count 2 and a concurrent one-year term on Count 5. Miranda-Retana was given credit for 330 days actual custody and 49 conduct days, for a total of 379 days. He was ordered to pay a $2,160 restitution fund fine and a $2,160 suspended parole revocation fine. (§§ 1202.4, 1202.45.)

On November 27, 2012, Miranda-Retana filed a timely notice of appeal challenging only postplea matters. Miranda-Retana filed a second notice of appeal on January 10, 2013, including a request for a certificate of probable cause which was granted. In the second notice of appeal, Miranda-Retana challenged the validity of his plea, alleging that he was not adequately counseled by his trial attorney as to the immigration consequences of his plea, and that he had been misadvised by counsel as to his eligibility for conduct credits during his imprisonment.

## II. DISCUSSION

Our review of the record reveals no arguable issues. With the assistance of counsel and an interpreter, Miranda-Retana initialed and signed a waiver of rights form waiving his rights to a speedy and public trial, to confront and cross-examine the witnesses against him, to subpoena witnesses and present evidence, and his right against self-incrimination. The trial court found that Miranda-Retana's waiver of rights was

---

the presentence report recited that Miranda-Retana received a total score of 4, placing him in the category of "Moderate-High Risk" for reoffense.

knowing, intelligent and voluntary. The court found a factual basis for the plea in the testimony presented at the preliminary hearing and in the police reports.

The two claims on which a certificate of probable cause was granted are belied by the record. Miranda-Retana was assisted by a Spanish language interpreter and specifically advised of the immigration consequences of his plea in both English and Spanish. In the court's colloquy with Miranda-Retana at the time of the plea, the court told him that the plea "may very well have the consequences of deportation . . . ." Miranda-Retana's attorney then said, "Your honor, it will definitely have that result." Miranda-Retana's claim that his attorney misadvised him as to his eligibility for conduct credits during his imprisonment is directly contradicted by the record of the confidential *Marsden* hearing, in which Miranda-Retana expressed his dissatisfaction that under the terms of the proposed plea bargain he would receive only 15 percent conduct credits while in prison.

Miranda-Retana received all applicable presentence custody credits. No abuse of the trial court's "broad discretion" in sentencing is shown. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

### III. DISPOSITION

The judgment is affirmed.


_____
Bruiniers, J.


We concur:


_____
Jones, P. J.


_____
Needham, J.