[No. F007225. Fifth Dist. Sept. 4, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES O'DANIEL, Defendant and Appellant.

COUNSEL

Michael J. Ward, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, W. Scott Thorpe and David DeAlba, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BEST, J.—Pursuant to a plea bargain, defendant entered a plea of guilty to the newly added charge of violating Penal Code[1] section 12020, subdivision (a), possession of a concealed weapon. The original charge of unlawful possession of a sharp instrument while confined in a state prison in violation of section 4502 was dismissed. Defendant was sentenced to the lower term of 16 months to be served consecutively to the sentence he was already serving. On appeal, defendant contends that the doctrine of collateral estoppel, based upon a prison disciplinary hearing determination finding him guilty of a lesser offense (possession of contraband), precludes the prosecution of the present greater offense. We will affirm the judgment.

FACTS

On October 29, 1985, Correctional Officer Rodney Bowman searched defendant's locker located in a housing area referred to as Clark Hall at the California correctional institution in Tehachapi. During the search of defendant's secured locker, the officer found a screwdriver that had been sharpened to a point. The tip of the screwdriver resembled a blade, and the

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

handle was marked as being from the vocational automotive department. Defendant, who was present at the time of the search, stated that he received the screwdriver from an inmate in the hobby shop and that he used it for tightening his guitar strings. At the time of the search, defendant was lawfully incarcerated.

## DISCUSSION

### I

*Is the issue of collateral estoppel cognizable on appeal following a plea of guilty?*

Defendant's motion to dismiss the information on the theory of collateral estoppel was denied by the trial court. After his plea of guilty, the lower court issued a certificate of probable cause authorizing the instant appeal pursuant to section 1237.5. ■ Plaintiff contends defendant's renewed claim that the doctrine of collateral estoppel barred the subsequent filing of a criminal complaint is not cognizable on appeal in light of defendant's plea of guilty.

Other than search and seizure issues specifically reviewable under section 1538.5, subdivision (m), all errors arising prior to entry to a plea of guilty or nolo contendere are waived by the plea, except those based on "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings . . . ." (§ 1237.5, subd. (a); Cal. Rules of Court, rule 31(d); *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].) ■ Issues which merely go to the guilt or innocence of a defendant are removed from consideration by entry of a guilty plea. (*People* v. *Pinon* (1979) 96 Cal.App.3d 904, 909-910 [158 Cal.Rptr. 425].) In short, a defendant cannot admit the sufficiency of the evidence by pleading guilty and then question the evidence by an appeal under section 1237.5. (*People* v. *Padfield* (1982) 136 Cal.App.3d 218, 227 [185 Cal.Rptr. 903].)

■ To support its contention that defendant's claim of collateral estoppel is not cognizable on appeal after a plea of guilty, plaintiff relies on *People* v. *Shults* (1984) 151 Cal.App.3d 714 [199 Cal.Rptr. 33]. In *Shults,* the defendant entered a plea of nolo contendere to a criminal offense after an administrative hearing determined that a claim of welfare overpayments was unsupported and that referral for criminal prosecution was improper. *Shults* held that the defendant's plea foreclosed review of the lower court's ruling on the issue of collateral estoppel under the circumstances. (*Id.* at p. 718.) Prior to pleading nolo contendere, defendant moved *in limine* for the admission into evidence of the result of the administrative fair hearing,

which was denied. While defendant's contention was that the state was collaterally estopped to relitigate in a criminal prosecution the charge of welfare fraud of which defendant was exonerated in the administrative fair hearing, the court noted that the decisive question was not as framed by defendant, but rather was whether the trial court's *in limine* evidentiary ruling is insulated from appellate review by defendant's plea of nolo contendere. The court concluded: "Defendant's *in limine* motion addressed a purely evidentiary question. Apart from issues cognizable under Penal Code section 1538.5, there is no established procedure for pretrial determination of questions of admissibility of evidence. Defendant therefore has no right unilaterally to seek such a ruling. If such a ruling nevertheless is secured it is provisional only and is not binding on either the judge or the parties. [Citation.]" (*Id.* at p. 719.)

On the other hand, in the case of *People* v. *Meyer* (1986) 183 Cal.App.3d 1150 [228 Cal.Rptr. 635], the defendant was a welfare recipient under the program of aid to families with dependent children who was suspected of failing to report income as required. The Department of Social Services notified defendant that they were going to discontinue his benefits, at which time defendant requested a "fair hearing." The hearing officer concluded that the county had failed to sustain its burden of proof and ordered the county to rescind its notice proposing to discontinue defendant's benefits. Subsequently, defendant was charged with two counts of welfare fraud and one count of fraudulently obtaining food stamps. Defendant moved to dismiss the charges on grounds that the district attorney was collaterally estopped to bring charges since defendant had been exonerated at the administrative hearing. The motion was denied, and defendant pleaded guilty to one count of welfare fraud.

One of the issues considered by the appellate court was whether, under section 1237.5, defendant's contention that the trial court erred in denying his motion to dismiss upon grounds of collateral estoppel was cognizable. It noted that the issue of cognizability must be tested under the language of section 1237.5, which states that only "constitutional, jurisdictional, or other grounds going to the legality of the proceedings" survive a plea of guilty. Even though it cited the *Shults* case, *supra,* 151 Cal.App.3d 714, for the proposition that issues which merely go to the guilt or innocence of a defendant are removed from consideration by entry of a guilty plea, the court nevertheless considered the issue of whether the phrase "other grounds going to the legality of the proceedings" includes a claim of collateral estoppel as an issue of first impression. The court concluded that it does and, therefore, the issue is properly asserted on appeal following a plea of guilty for the following reasons: "The issue of collateral estoppel also does not involve a party's guilt or innocence, rather it is a doctrine which seeks

to (a) avoid repetitive litigation of a single issue, (b) conserve judicial resources, and (c) prevent inconsistent decisions and thereby encourage reliance on adjudication. [Citation.] In *People* v. *Sims* (1982) 32 Cal.3d 468 . . . , the California Supreme Court held that a Department of Social Services fair hearing decision exonerating a defendant of welfare fraud collaterally estopped the prosecutor from pursuing a criminal action against respondent for the same alleged misconduct. (*Id.,* at p. 489.) The court noted that giving conclusive effect to the DSS hearing would promote judicial economy by minimizing repetitive litigation, would eliminate the possibility of inconsistent judgments which may undermine the integrity of the judicial system, would maintain the value of the fair hearing determination, and would avoid subjecting an exonerated defendant to a second proceeding in which he or she must defend himself or herself against the same charges of misconduct.

"Since the doctrine of collateral estoppel is predicated on policy reasons which do not involve the guilt or innocence of the party, and in fact may be asserted by a factually guilty defendant, we find that the defendant's plea of guilty cannot be deemed a waiver of his or her asserted but denied right to have the charges dismissed on grounds of collateral estoppel. We hold that the wrongful denial of an appellant's motion to dismiss on grounds of collateral estoppel is included in the phrase 'other grounds going to the legality of the proceedings' pursuant to Penal Code section 1237.5." (*People* v. *Meyer, supra,* 183 Cal.App.3d at pp. 1158-1159.)

The instant case is very similar to *People* v. *Meyer, supra,* and distinguishable from *People* v. *Shults, supra,* 151 Cal.App.3d 714. Here, as in *Meyer,* the defendant brought a motion to dismiss on the grounds of collateral estoppel. Unlike *Shults,* it was not made in a motion *in limine* to introduce evidence of the prior proceeding. Moreover, the conclusion in *Meyer* that the doctrine of collateral estoppel does not involve the guilt or innocence of the party is consistent with our holding in *People* v. *Durrett* (1985) 164 Cal.App.3d 947, 955 [210 Cal.Rptr. 874]. (See also *People* v. *Padfield, supra,* 136 Cal.App.3d 218, 228; *People* v. *Cella* (1981) 114 Cal.App.3d 905, 915, fn. 5 [170 Cal.Rptr. 915].) We therefore hold that a collateral estoppel claim raised in a pretrial motion to dismiss survives a guilty plea for purposes of appellate review.

## II

*Does the doctrine of collateral estoppel preclude prosecution of the charged offense?*

■ Relying on the holding of *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321], defendant sought to dismiss the instant charge

on the theory of collateral estoppel. Defendant argued below that a determination of guilt of a lesser offense (possession of contraband) at a prison disciplinary hearing precluded a subsequent criminal prosecution for the greater offense (possession of a weapon). The lower court rejected defendant's argument and denied his motion to dismiss. Defendant renews his argument on appeal.

In the past, California courts have consistently held that prison disciplinary measures are no bar to a subsequent prosecution for violation of a penal statute prohibiting the same act which was the basis of the prison discipline. These cases have steadily rejected the claim that a criminal prosecution was barred by the prohibition against double jeopardy (*People* v. *Hayes* (1971) 16 Cal.App.3d 662, 668 [94 Cal.Rptr. 222]; *In re Gullatt* (1968) 69 Cal.2d 395, 398 [71 Cal.Rptr. 676, 445 P.2d 292]; *People* v. *Eggleston* (1967) 255 Cal.App.2d 337, 339 [63 Cal.Rptr. 104]) or double punishment. (*People* v. *Ford* (1959) 175 Cal.App.2d 37, 39 [345 P.2d 354].) The courts have reasoned that summary means of implementing reasonable rules are essential to the operation of a prison and that prompt imposition of sanctions is a necessary tool for purposes of prison security. These cases also recognize that the sanctions imposed as a result of a prison disciplinary hearing do not extend the term a prisoner is already serving, but merely make the existing term more onerous. As stated in *People* v. *Eggleston, supra,* at pages 339-340: "Some summary means of implementing reasonable rules obviously is essential to the operation of a prison. Rules without sanctions of some sort would be useless even in a kindergarten or first grade class. Patently, the need is greater in a prison, whose inmates are there because they have demonstrated an inability to conform to standards deemed necessary to preserve life and order in a free community. Moreover, prompt imposition of these sanctions, quickly apparent to others of the prison population, is a necessity. If one inmate is caught openly flouting an established rule, yet retains all the privileges he had when he obeyed all rules, mass disobedience is likely to follow. Prompt imposition of sanctions in such a case may well be more important for its effect upon the other inmates than for that upon the offender. This is particularly true of possession of weapons, a rule infraction which threatens the safety and lives of guards, civilian employees, and inmates.

"The confinement of this defendant in an isolation unit deprived him of his separate quarters, association with others, and access to the yard and recreation areas. But these were privileges voluntarily granted to him during good behavior. They were not rights inherent in his status as a prisoner. Imposition of this sanction in no way extended the term defendant was already serving. It brought upon him no new term of imprisonment. It merely made his existing term more onerous (*People* v. *Ford, supra,* 175

Cal.App.2d 37). Concededly, no cruel or unusual punishment is involved. Rather, the privileges taken from him were those which were likely to permit him again to make or procure a weapon. The rule sought by defendant would require prison authorities to leave him, pending trial for the Penal Code violation, with the same facilities which enabled him to acquire the contraband weapons the first time. We conclude that this disciplinary measure imposed by an administrative body did not place defendant in jeopardy, so as to bar his prosecution in a judicial proceeding for violation of a penal statute."

Recently, however, in the context of a Department of Social Services administrative fair hearing on the issue of welfare fraud, the California Supreme Court held that the doctrine of collateral estoppel was a valid defense to a criminal proceeding following the hearing. (*People* v. *Sims, supra,* 32 Cal.3d 468.) In *Sims,* the court found that an administrative decision exonerating a person of welfare fraud charges prevented a subsequent criminal prosecution. However, it is clear that the court did not expressly disapprove the *Eggleston* line of cases, nor does it appear that the court implicitly intended such a result. The court prefaced its discussion of collateral estoppel application to an administrative hearing by stating, "In this case, the court is only concerned with whether a DSS fair hearing decision has binding effect in a collateral criminal proceeding." (*People* v. *Sims, supra,* at p. 477.) After a lengthy discussion of the reasons for making the doctrine of collateral estoppel applicable to a Department of Social Services hearing, the court concluded as follows: "In the particular and special circumstances of this case, collateral estoppel bars the state from prosecuting respondent for welfare fraud since she was exonerated in a DSS hearing of that charge. The DSS was 'acting in a judicial capacity and resolv[ing] disputed issues of fact properly before it which the parties . . . had an adequate opportunity to litigate.' [Citation.] Further, the traditional prerequisites and policy reasons for applying collateral estoppel have been met here. The application of collateral estoppel is also warranted in this particular setting due to the unique statutory scheme which established a preference for the noncriminal resolution of cases involving an accusation of welfare fraud." (*Id.* at pp. 489-490.)

The crux of the holding in *Sims* was the Supreme Court's determination that the DSS administrative hearing was judicial in character.

"Collateral estoppel may be applied to decisions made by administrative agencies '[w]hen an administrative agency is *acting in a judicial capacity* and *resolves disputed issues of fact* properly before it which the parties have had an *adequate opportunity to litigate* . . . .' [Citation.] This standard

formulated by the Supreme Court is sound, and it comports with the public policy underlying the collateral estoppel doctrine 'of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. [Citations.]' [Citation.]

"To ascertain whether an agency acted 'in a judicial capacity,' the federal courts have looked for factors indicating that the administrative proceedings and determination possessed a ' "judicial" character.' [Citations.]

"Here, the fair hearing conducted by the DSS pursuant to section 10950 was a judicial-like adversary proceeding. Section 10955 required that the hearing be conducted in an 'impartial . . . manner' and that '[a]ll testimony . . . be submitted under oath or affirmation.' The DSS allowed either party to call, examine, and cross-examine witnesses as well as to introduce documentary evidence and make oral or written argument. At the request of the County or respondent, the chief referee was required to subpoena witnesses whose expected testimony would be material or necessary to the case. (DSS, Manual of Policies & Proc., reg. 22-049.6 (hereafter, MPP).['] It was also required by regulation 22-049.3 that a verbatim record of the testimony and exhibits introduced at the hearing be maintained. In addition, the parties received from the DSS a written statement of the reasons why the hearing officer exonerated respondent of the fraud allegations.

"Finally, the hearing officer's decision, itself, was adjudicatory in nature. The decision involved the application of 'a rule [requiring restitution for fraudulently obtained overpayments] to a specific set of existing facts,' rather than 'the formulation of a rule to be applied to all future cases.' [Citation.] After the decision had been adopted by the director of the DSS, the County had both the right to seek a rehearing before the agency and the right to petition for review in superior court. (§§ 10959, 10962.)" (*People* v. *Sims, supra,* 32 Cal.3d at pp. 479-480, fns. omitted.)

Defendant maintains that the prison disciplinary hearing on November 21, 1985, had all of the attributes of a judicial proceeding and resulted in a final judgment on the same allegation for which defendant was ultimately criminally prosecuted. Defendant contends the hearing officer's determination that defendant was guilty of the lesser offense of possession of contraband[2] effectively barred defendant's prosecution for possession of a weapon. Defendant argues the hearing officer's finding acquitted him of the more serious offense.

---

[2] Defendant was charged with possession of a weapon but was found guilty of possession of contraband which the hearing officer testified was a less serious offense.

It appears that the *Sims* case does not control here. Unlike the situation in *Sims,* the prison disciplinary hearing was not conducted by a judicial officer acting in a judicial capacity. Therefore, the hearing did not possess the "judicial character" inherent in a hearing which is ultimately acknowledged as a final judgment for purposes of collateral estoppel. The prison hearing was heard by a correctional officer[3] and not by a judicial officer or other official with a legal background or training. In *Sims,* the hearing was administrative in nature and was heard by a hearing officer who conducted the hearing pursuant to a statutory mandate. In addition, the statute in *Sims,* section 10955 of the Welfare and Institutions Code, required that the hearing be conducted in an "impartial . . . manner" and that all "testimony . . . be submitted under oath or affirmation." Moreover, section 10962 of the Welfare and Institutions Code further provides that either party may obtain review of the hearing officer's decision under the provisions of section 1094.5 of the Code of Civil Procedure. ■ This method of review is available only where a contested administrative decision is adjudicative in nature. (*Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 814, fn. 9 [140 Cal.Rptr. 442, 567 P.2d 1162].)

■ In contrast, the prison disciplinary hearing in the instant case shared none of the above characteristics. Prison disciplinary hearings are the subject of the California Administrative Code. Title 15, California Administrative Code, section 3315 sets out the procedures for such hearings. Section 3315 does not set forth factors creating a judicial-type adversary proceeding within the meaning of *Sims.* Section 3315 does not expressly require that testimony be under oath or that the proceeding be conducted by an unassociated third party, as does section 10955 of the Welfare and Institutions Code. Unlike the situation in *Sims,* where the hearing officer was a neutral and detached judicial officer not affiliated with any of the parties, California Administrative Code section 3315 provides that the prison disciplinary hearing may be conducted by a "senior hearing disciplinary officer," who in this case was a correctional officer at the institution. The correctional officer was not a neutral and detached hearing officer in the same sense that the hearing officer in *Sims* was. The hearing officer in *Sims* was from a separate state agency and not an employee of one of the parties.

Furthermore, title 15, California Administrative Code, section 3316 provides that "All felonies occurring on institution property, including conduct which also constitutes a crime, will be referred . . . to appropriate criminal authorities for possible investigation and prosecution." It also provides that a "criminal authorities' decision not to prosecute, or a trial court's dismissal

---

[3] Lieutenant R. Vieyra acted as a senior disciplinary hearing officer.

of criminal charges without having found the inmate not guilty of criminal conduct, will have no bearing on the findings and disposition of disciplinary charges." Finally, that section provides that "A court's action on a finding of guilty to criminal charges will not bar or reverse any authorized disciplinary action for the same charges." Thus, unlike the "unique statutory scheme," as that in *Sims,* which established a preference for the noncriminal resolution of cases involving an accusation of welfare fraud, there is no apparent preference with regard to the resolution of inmate misconduct cases.

For all of the foregoing reasons, we hold that the doctrine of collateral estoppel does not apply in this case.

■ Moreover, as noted earlier, summary means of implementing reasonable rules are essential to the operation of a prison. (*People* v. *Eggleston, supra,* 255 Cal.App.2d at p. 339.)

### III

*Should the case be remanded for resentencing?*

■ Defendant was originally charged with a violation of section 4502 which provides for an automatic consecutive sentence upon conviction. Defendant pled guilty to a violation of section 12020 which does not mandate a consecutive sentence upon conviction. Plaintiff acknowledges the sentencing court's erroneous assumption that section 12020 required a consecutive sentence. However, despite the lower court's error, it appears it was harmless and no purpose would be served by remanding the case for resentencing in view of the four factors in aggravation cited by the court as independent reasons for its election to impose a consecutive sentence.

"In aggravation, the Court will find the defendant's prior convictions as an adult are numerous. The defendant has served, in fact, is serving a prior prison term. And the defendant's prior performance on probation and parole is unsatisfactory. And the criteria affecting the decision to impose a consecutive sentence include the crimes and their objectives were predominantly independent of each other." The lower court cited no factors in mitigation. Defendant does not challenge the court's findings. It is not reasonably probable that a sentence more favorable to defendant would be imposed if the case were remanded.

The judgment is affirmed.

Franson, Acting P. J., and Martin, J., concurred.