**Vincent MARQUEZ, Plaintiff,**

v.

**R.J. GUTTIEREZ, Defendant.**

**No. CIV. S–96–457 LKK/GGH P.**

United States District Court,
E.D. California.

June 4, 1999.

Vincent Marquez, Corcoran, CA, pro se.

Jill Theresa Bowers, Attorney General's Office of the State of California, Sacramento, CA, for defendants.

KARLTON, District Judge.

This matter is before the court on defendant's motions in limine. The court resolves the matters on the pleadings and papers herein, and after oral argument.[1]

## I.

## PROCEDURAL HISTORY

Plaintiff Vincent Marquez, a state prisoner proceeding pro se, brings this suit against defendant R.J. Gutierrez, a California Department of Corrections officer. It is undisputed that during a prison-yard melée at California State Prison–Sacramento defendant shot plaintiff in the leg with a rifle. The bullet wound is alleged to have caused considerable tissue and bone damage.

After the incident, defendant filed a disciplinary report (referred to in departmental vernacular as a "115") which accused plaintiff of kicking another inmate, Perez, in the head in the midst of the fracas while Perez was on the ground. Based upon this report, plaintiff was found to have committed a battery on Perez at a prison disciplinary hearing and disciplined by confinement in the secured housing unit (SHU) and the loss of good time credits.[2] On administrative appeal, a senior officer of the Department of Corrections affirmed those findings.

---

1. Although plaintiff is proceeding *in propria persona,* the court solicited an amicus brief on plaintiff's behalf for these motions. The court wishes to express its gratitude to Mr. Jay Allen Eisen for filing the amicus brief which greatly aided the court in resolving the issues tendered by the motions.

2. Because defendant was on administrative leave, plaintiff could not interrogate him at the hearing. The hearing officer relied on defendant's untested 115 report disregarding a statement from a third inmate, Garcia, accepting responsibility for kicking Perez and denying plaintiff's involvement in the melée.

In this suit, brought pursuant to 42 U.S.C. § 1983, plaintiff asserts that defendant employed excessive force when he shot him, thereby subjecting him to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States. Plaintiff has indicated in pretrial declarations that he intends to introduce evidence that he was an innocent bystander during the scuffle, or that, to the extent he was physically engaged, it was in self-defense. Those assertions notwithstanding, plaintiff's primary theory is that the firing of lethal ammunition at an unarmed prisoner was unjustified, even if plaintiff was culpable of battery prior to the shooting.

In preparation for trial, defendant filed a motion in limine seeking an order prohibiting plaintiff from adducing evidence which would contradict the findings of the prison disciplinary hearing. He argues that *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), compels such an order. Defendant initially acknowledged that the *Heck/Balisok* doctrine would not preclude the entire claim and thus sought only the exclusion of evidence. Now, however, while maintaining his original position, defendant also contends that the entire action should be dismissed, relying on the Fifth Circuit's decision in *Clarke v. Stalder*, 154 F.3d 186 (5th Cir.1998). Defendant also contends that the principles of estoppel bar plaintiff from attempting to relitigate his involvement in the melée.

Finally, defendant moves in limine to exclude evidence of medical malpractice on the grounds that the sole remaining defendant had no duty to provide medical aid.

Below I address each of these issues seriatim.

## II.

## SECTION 1983 AND HABEAS CORPUS

Relying on *Heck* and *Balisok* defendant maintains that plaintiff may not testify as to his version of the events preceding the shooting. I turn first to a consideration of the issues resolved in *Heck* and its extension in *Balisok*, to determine whether they implicate plaintiff's testimony at all.

### A. *HECK* AND *BALISOK*

■ The issue before the Supreme Court in *Heck* was "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." *Heck*, 512 U.S. at 478, 114 S.Ct. 2364.[3] The plaintiff in *Heck* sought relief under § 1983, which provides a remedy for violations of civil rights. As the Supreme Court saw it, the case was framed by the relationship between § 1983 and the writ of habeas corpus which provides "the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement ... even though such a claim may come within the literal terms of § 1983." *Id.* at 481, 114 S.Ct. 2364 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). The Court held that even if a claimant seeks damages under § 1983, if the suit requires a determination of the constitutionality of the procedures underlying a prisoner's confinement or its duration, the prisoner cannot seek damages under § 1983, and instead must proceed under habeas. *Id.* at 481–482, 93 S.Ct.

---

**3.** The plaintiff in *Heck* sought to recover damages pursuant to § 1983 for an allegedly unlawful, unreasonable and arbitrary investigation leading to his arrest and conviction for murder. *Heck v. Humphrey*, 512 U.S. 477, 478–79, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The original complaint prayed only for compensatory and punitive damages and did not seek injunctive relief nor release from custody. *Id.* at 478, 114 S.Ct. 2364. The district court dismissed the claim because "the issues it raised directly implicated the legality of petitioner's confinement." *Id.* at 479, 114 S.Ct. 2364. The Seventh Circuit affirmed premised on its understanding that, if a civil rights suit in effect challenged the legality of conviction, it should be treated as an application for habeas corpus. *Heck v. State.*, 997 F.2d 355, 357 (1993).

1827 (distinguishing *Preiser* and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).[4]

In addressing the two distinct grants of jurisdiction,[5] the High Court noted that Heck's action was analogous to the common-law cause of action for malicious prosecution, because "it permits damages for confinement imposed pursuant to legal process." *Heck*, 512 U.S. at 484, 114 S.Ct. 2364. Relying on this analogy the Court held that a condition precedent to a viable suit for damages by a prisoner where a favorable result "would render a conviction or sentence invalid" was that "the conviction was reversed, expunged by executive order, or otherwise declared invalid by a state or federal tribunal." *Id.* at 486–87, 114 S.Ct. 2364. Thus, in the absence of such circumstances, a § 1983 suit will not lie where a judgment in favor of the plaintiff "would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487, 114 S.Ct. 2364.

Heck's § 1983 claim for money damages premised upon asserted unconstitutional procedures necessarily called into question the lawfulness of his conviction or confinement and, under the Supreme Court's view, inevitably brought his cause within the ambit of habeas.[6] The analogy of such a suit to malicious prosecution as a challenge to process, is key to understanding the reach of *Heck*. Because like malicious prosecution it is the propriety of the process that is in question, the doctrine applies only to § 1983 suits challenging the process accorded in the underlying conviction.[7]

■ *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), extended *Heck* to prison disciplinary proceedings. There a state prisoner sued Washington state prison officials under § 1983 alleging that the procedures used in a disciplinary hearing which deprived him of good-time credits violated due process. The plaintiff alleged that the hearing officer concealed exculpatory witness statements and therefore intentionally denied him the opportunity to present evidence in his own defense. Thus, as in *Heck*, the plaintiff in *Balisok* directly attacked the constitutionality of the underlying procedure.

The Supreme Court granted certiorari to address the question "whether a claim for damages and declaratory relief ... challenging the validity of the procedures used to deprive him of good-time credits is cognizable under § 1983." *Balisok*, 520 U.S. at 643, 117 S.Ct. 1584. The Court,

4. Why, given the judiciary's obligation to give effect to both statutes, *see, e.g., Ruckelshaus v. Monsanto*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), the remedies are not viewed as cumulative rather than exclusive, has not been explained by the Supreme Court.

5. The court explained that Heck's appeal:

"lies at the intersection of the two most fertile sources of federal-court prisoner litigation—the Civil Rights Act of 1871, Rev Stat § 1979, as amended, 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254. Both of these provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials, but they differ in their scope and operation."

*Heck*, 512 U.S. at 480, 114 S.Ct. 2364.

6. Although Heck sought to challenge the contention that his complaint necessarily presented a challenge to the validity of his conviction, the Court deemed that argument untimely, and observed that "we did not take this case to review such a fact-bound issue." *Heck*, 512 U.S. at 480 n. 2, 114 S.Ct. 2364. The majority noted that:

"neither in his petition for certiorari nor in his principal brief on the merits did petitioner contest the description of his monetary claims ... as challenging the legality of his conviction."

*Id.* Thus the Court reiterated that "the question we understood to be before us was whether money damages premised on an unlawful conviction could be pursued under § 1983." *Id.*

7. Indeed, defendant implicitly concedes that *Preiser, Heck* and *Balisok* only extend to due process challenges. *See* Defendant's Reply at 2:21–25 (arguing that the Fifth Circuit in *Clarke v. Stalder*, 154 F.3d 186 (5th Cir.1998), established "new law" in extending the above-referenced trilogy beyond due process challenges).

relying on its *Heck* analysis, extended the bar to suits where state prisoners sought damages under § 1983 by virtue of the alleged invalidity of the disciplinary procedures. *Id.* at 648, 117 S.Ct. 1584.

Unlike *Heck*, the plaintiff in *Balisok* timely argued that he was challenging only the procedures and not the deprivation of the good-time credits as a substantive matter. In other words, "his claim posited that the procedures were wrong, but not necessarily that the result was." *Id.* at 645, 117 S.Ct. 1584. The Supreme Court found the distinction immaterial, holding that "the principal procedural defect complained of by [plaintiff] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646, 117 S.Ct. 1584. In other words, if the hearing officer had in fact concealed exculpatory evidence, the discipline imposed would necessarily be undermined. Again it must be noted that the subject of the suit was the alleged deficient procedure.

## B. PLAINTIFF'S CLAIM

■ The matter at bar is distinguishable from *Heck* and *Balisok* because plaintiff here does not challenge the constitutionality of any relevant process, whether that accorded in his original conviction or in the disciplinary hearing. Plaintiff does not seek compensation for the time he spent in the SHU or reinstatement of his loss of good-time credits imposed as the disciplinary penalty after the hearing. He premises his claim for damages upon asserted excessive force during the incident which preceded his administrative conviction. It is for this reason that defendant's concession that the *Heck/Balisok* doctrine does not bar plaintiff's suit is well-taken, but it is for this same reason that his motion in limine must be denied. Put another way, as I detail below in Section V, *Heck/Balisok* is not a preclusionary doctrine. Rather, as explained above, *Heck* and its progeny address the scope of § 1983 relief available to a prisoner seeking compensation for alleged defective process. Since, as defendant concedes, the doctrine does not bar plaintiff's suit, and thus relief for claims such as plaintiff's is available under § 1983, the doctrine is irrelevant to plaintiff's suit.

Even if *Heck* and *Balisok* in some manner implicated the admissibility of evidence, defendant's motion would be ill-founded. It is true that if permitted, plaintiff will contend, *inter alia*, that he was an innocent bystander in the melée or in the alternative that he kicked Perez in self-defense. To that extent he does suggest that the 115 report, relied on in the disciplinary hearing, is unreliable. That attack on the evidence relied on in the administrative hearing, however, is not an attack on the adequacy of the process accorded him at the disciplinary proceeding. Credibility judgments do not ordinarily implicate constitutional rights. *See, e.g., Roberts v. Corrothers*, 812 F.2d 1173, 1177–79 (9th Cir.1987)(issues of credibility of evidence may not be inflated into a constitutional claim).

The only claim remaining for trial in this case is "[w]hether defendant Gutierrez used excessive force against plaintiff when he shot him on August 28, 1995." *See* Pretrial Order filed May 21, 1998 at 2:5–6. Nothing about that claim challenges, directly or indirectly, the constitutionality of the disciplinary conviction. I reiterate that plaintiff does not seek damages premised on any injury suffered by virtue of that proceeding, nor does he seek damages from the hearing officer because the findings were erroneous, nor finally does he seek damages because the report the hearing officer relied on was false. Rather, plaintiff claims that the shooting, which was not a subject of the disciplinary hearing, was a violation of his Eighth Amendment rights, and he seeks damages based on the physical injury arising from the shooting. Given that the disciplinary hearing occurred after the shooting, the process applied at the hearing simply is not a cause of the physical injury for which plaintiff seeks relief, nor does plaintiff claim it to be. Put directly, while plaintiff's proposed evidence disputes defendant's report, plaintiff does not seek "dam-

ages for ... harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364. In the broadest sense then, a jury finding in favor of plaintiff in the matter at bar would not necessarily imply the invalidity of his disciplinary conviction. As I now explain, the same is true as a matter of logic.

Given that the case at bar relates to accusations of excessive force on the prison yard, a jury could conclude that, even if plaintiff was culpable in the melée, defendant nonetheless used excessive force. It is also conceivable that a jury could find, as plaintiff also contends, that the use of lethal force is never justified against an unarmed inmate. The variety of potential findings demonstrate that a judgment in plaintiff's favor "would not necessarily imply the invalidity" of his disciplinary conviction, even though under some circumstances it might do so. *See Heck,* 512 U.S. at 487 n. 7, 114 S.Ct. 2364 (where criminal defendant sued for damages for unreasonable search, the § 1983 action was nevertheless cognizable because the existence of doctrines of independent source and harmless error meant that his § 1983 action would not necessarily invalidate his conviction); *and see Smithart v. Towery,* 79 F.3d 951 (9th Cir.1996)(excessive force claim which does not necessarily imply invalidity of arrest not barred by *Heck* ).

In sum, I conclude, as defendant concedes, that the *Heck/Balisok* doctrine does not bar plaintiff's § 1983 claim for excessive force, and also that, contrary to defendant's contention, it is irrelevant to the admissibility of evidence in this suit.

### III.

### *CLARKE v. STALDER*

Defendant argues in his supplemental brief that "new law" established by *Clarke*

*v. Stalder,* 154 F.3d 186 (5th Cir.1998), bars plaintiff's § 1983 action. *Clarke* is not binding on this court, and in any event, I do not find defendant's argument persuasive.

In *Clarke,* plaintiff, a state prisoner, was disciplined after a prison proceeding determined that he had violated a prison rule prohibiting inmates from threatening corrections staff with legal redress during "confrontation situations." The prisoner brought a § 1983 claim alleging that the rule violated his free speech rights. The Fifth Circuit held that the prisoner could not bring a facial challenge to the prior restraint because a favorable result would necessarily invalidate his disciplinary conviction.[8] *Clarke,* 154 F.3d at 190–91.

Defendant argues that *Clarke* establishes that the *Heck* doctrine is not limited to due process challenges. Based on this court's analysis of *Heck* as explained above, I conclude that *Clarke*'s conclusion is doubtful. Whatever the validity of *Clarke,* however, it is not dispositive here. As discussed above, the claim pressed by plaintiff here would not necessarily invalidate his disciplinary conviction. The favorable resolution of his excessive force claim would not necessarily mandate the reinstatement of his good-time credits, or otherwise undermine his punishment. Accordingly, *Clarke* adds no persuasive force to defendant's position, and defendant's motion to dismiss plaintiff's claim will be denied.

### IV.

### PRECLUSION

The issue presented by defendant's motion is whether plaintiff should be preclud-

8. The *Clarke* court acknowledged that under *Balisok* some claims for prospective declaratory or injunctive relief may be cognizable under § 1983 but held that the relief sought—a declaration that the prior restraint was unconstitutional—was "too intertwined" with

his request for damages and that resolution of the First Amendment issue would automatically entitle him to reinstatement of his loss of good-time credits. *Clarke v. Stalder,* 154 F.3d at 189.

ed from adducing evidence contradicting the 115 report upon which the administrative hearing officer relied. The motion thus also raises the issue of whether collateral estoppel precludes plaintiff from presenting such evidence. Below I address that issue, beginning with a brief outline of the pertinent doctrine and then applying those principles to the matter at bar.

■■■ Assuming a full and fair opportunity to litigate, *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480–81, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), federal courts must accord preclusive effect to state court judgments. 28 U.S.C. § 1738. Both issue preclusion (collateral estoppel) and claim preclusion (res judicata) apply to actions under 42 U.S.C. § 1983. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (issue preclusion); *Migra v. Warren City School Dist. Board*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)(claim preclusion). State law determines the preclusive effect of previous state proceedings. *Migra*, 465 U.S. at 81, 104 S.Ct. 892; *Valley Wood Preserving, Inc. v. Paul*, 785 F.2d 751, 753 (9th Cir. 1986). Federal courts will give preclusive effect to fact finding by state agencies acting in a judicial capacity when the parties have had a full and fair opportunity to litigate those issues, and when state law so requires. *University of Tennessee v. Elliott*, 478 U.S. 788, 798, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).

■■■ Issue preclusion prevents relitigation of all "issues of fact or law that were actually litigated and necessarily decided" in a prior proceeding. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (quoting *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir.1979)). The issue must have been "actually decided" after a "full and fair opportunity" for litigation. *Five Platters*, 838 F.2d at 322. Under the doctrine of "offensive" collateral estoppel, a litigant who was not a party to the prior case may assert collateral estoppel in the later case against the party who lost on the decided issue in the first case. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99

S.Ct. 645, 58 L.Ed.2d 552 (1979). The party against whom collateral estoppel is to be asserted must have had a "full and fair opportunity" to litigate the issue in the earlier case. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Allen*, 449 U.S. at 101, 101 S.Ct. 411.

■■■ Under California law, an issue is precluded if (1) the issue decided in the prior adjudication is identical to the issue presented in the second case; (2) there was a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party to the prior adjudication. *Valley Wood*, 785 F.2d at 754 n. 4 (citing *Hirst v. California*, 770 F.2d 776, 778 (9th Cir.1985); *People v. Sims*, 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321 (1982)).

To the extent that plaintiff claims an entitlement to damages for excessive force, regardless of his level of involvement in the melée, defendant's objection is an attempt to preclude plaintiff from litigating the issue of his involvement. *See, e.g., Smithart v. Towery*, 79 F.3d 951 (9th Cir. 1996) (excessive force claim arising out of valid arrest not barred by *Heck*, but governed by principles of estoppel). As I now explain plaintiff is not precluded from litigating his involvement by virtue of the disciplinary hearing findings.

■■■ California gives preclusive effect to state administrative decisions pursuant to the guidance of *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). *See People v. Sims*, 32 Cal.3d 468, 479, 186 Cal.Rptr. 77, 651 P.2d 321 (1982); *Wehrli v. County of Orange*, 175 F.3d 692 (9th Cir.1999). Under *Utah Construction*, an administrative agency decision has the same preclusive effect as a state court decision if the procedures used to render the decision satisfy three requirements: (1) that the administrative agency acted in a judicial capacity; (2) that the agency

resolved disputed issues of fact properly before it; and (3) that the parties had an adequate opportunity to litigate.

Defendant argues that the disciplinary hearing upon which it relies comports with the requisites of due process enunciated in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and that suffices for preclusive effect. I cannot agree.

Assuming, without deciding, that a disciplinary hearing which satisfied due process standards also satisfies the element of a "full and fair opportunity to litigate," *see Kremer,* 456 U.S. at 482–83 & n. 24, 102 S.Ct. 1883, the *Utah Construction* test identifies two other conditions precedent to according preclusive effect to a state administrative hearing—the administrative agency must act in a judicial capacity, and the proceeding must resolve disputed issues of fact properly before it. Put another way, due process may be a necessary condition, but it is not sufficient to invoke collateral estoppel.[9]

■ The requirement that the administrative hearing officer must act in a judicial capacity to preclude relitigation, *Wehrli,* 175 F.3d at 694–95, is fatal to application of the doctrine in the matter at bar. California's courts have concluded that prison disciplinary hearings do not satisfy this requisite.

In *People v. O'Daniel,* 194 Cal.App.3d 715, 239 Cal.Rptr. 790 (1987), a defendant faced with criminal prosecution for the offense of possession of a concealed weapon argued that prosecution was precluded by virtue of the prior decision of a prison

disciplinary hearing finding him guilty of possession of contraband. The California Court of Appeals disagreed, holding that a correctional officer at the institution acting as a senior hearing disciplinary officer was not acting in a judicial capacity for purposes of collateral estoppel. *Id.* at 724, 239 Cal.Rptr. 790. The *O'Daniel* court found that the disciplinary hearing, while it followed the procedures set out in Cal. Admin. Code § 3315 and thus satisfied minimum process requirements, did not constitute a judicial-type adversary proceeding. Specifically, the court found that a prison disciplinary hearing was not conducted by a detached and neutral judicial officer acting in a judicial capacity. *Id.* (distinguishing *People v. Sims, supra,* in which the administrative hearing officer had no affiliation with any of the parties).[10]

Defendant contends that the holding of *O'Daniel* is inapplicable due to its consideration of double jeopardy. The argument does not lie. The *O'Daniel* court expressly considered collateral estoppel as distinct from the prohibition against double jeopardy. It concluded that the penalogical considerations justifying limited due process rights do not bear on the application of collateral estoppel. *Id.* at 721–23, 239 Cal. Rptr. 790. It noted that:

"the issue of collateral estoppel does not involve a party's guilt or innocence, [but] rather it is a doctrine which seeks to avoid repetitive litigation of a single issue, conserve judicial resources, and prevent inconsistent decisions and thereby encourage reliance on adjudication."

9. For that reason, contrary to defendant's urging, *In re Jackson,* 43 Cal.3d 501, 233 Cal.Rptr. 911, 731 P.2d 36 (1987), is not controlling. There the California Supreme Court addressed the requisites for due process within the context of a prison disciplinary hearing. The court, noting the variable standards for due process, concluded that the state's penalogical interest in swift and effective rules enforcement justified limiting the ambit of due process rights available in such a setting. Nothing about *Jackson,* nor the fact that due process safeguards are variable according to the setting, addresses the quite

separate issue of preclusion with its quite distinct policy considerations.

10. Other factors germane to whether the administrative hearing is a judicial-like adversary proceeding include whether the testimony is submitted under oath, whether the party could examine and cross-examine all witnesses, and whether a verbatim record of the proceeding was kept. *People v. O'Daniel,* 194 Cal.App.3d 715, 723–24, 239 Cal.Rptr. 790 (1987). The conduct of the disciplinary hearing in this case raises substantial questions as to each of these factors.

*Id.* at 720, 239 Cal.Rptr. 790 (citing *Sims* ). Because the prison disciplinary hearing officer was not acting in a judicial capacity, the state court concluded that collateral estoppel did not bar a criminal prosecution. *Id.* at 722–23, 239 Cal.Rptr. 790.

It follows ineluctably from *O'Daniel* that collateral estoppel does not support defendant's motion. Absent an agency acting in a judicial capacity, this court cannot afford the agency's findings preclusive effect. Thus, in the case at bar plaintiff will not be precluded from litigating the issue of his culpability in the prison-yard melée.

## V.

## MEDICAL MALPRACTICE

Defendant also moves to preclude plaintiff from adducing any evidence of medical malpractice or neglect. Nothing in the pretrial order suggests that plaintiff is asserting any claim on this theory.[11] The only conceivable reference to plaintiff's medical treatment is the dispute over the nature and extent of his physical injuries. The amicus brief filed on behalf of plaintiff concedes that there are no allegations even in plaintiff's pretrial statement that Gutierrez, the sole defendant in the case, had any duty to treat plaintiff's wounds or render medical care and attention. Accordingly, defendant's motion to exclude evidence of the quality of his medical treatment, insofar as it does not relate to the measure of damages and pain and suffering, will be granted.

## VI.

## CONCLUSION & ORDERS

Having resolved the motions herein, I recognize that the issues tendered present reasonable grounds for a difference of opinion, and that an immediate appeal may materially advance the proper resolution of this case.

For all of the foregoing reasons, the court hereby ORDERS:

1. Defendant's motion to preclude evidence contradicting the findings of the senior hearing officer in the disciplinary hearing is DENIED;

2. Defendant's motion to preclude plaintiff from adducing evidence of medical malpractice not related to damages is GRANTED;

3. This order is CERTIFIED for interlocutory appeal pursuant to 28 U.S.C. § 1292(b);

4. The parties are directed to NOTIFY the court within ten (10) court days of the decision of the Court of Appeals concerning the application for interlocutory appeal; and

5. All litigation in this case is STAYED until further order of the court.

IT IS SO ORDERED.

---

11. While the sole point of law listed in the pretrial order could be interpreted broadly to include an Eight Amendment claim for cruel and unusual punishment occasioned by deliberate indifference to plaintiff's medical needs, the undisputed and disputed facts—which only address whether Gutierrez used excessive force—preclude such a construction.